UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM GIPSON,<br><br>             Plaintiff,<br><br>        vs.<br><br>CORRECTIONAL OFFICERS SGT. R.<br>SCHMIST; *ET AL.*,<br><br>           Defendants. | Case No. 1:11-cv-02004-RRB<br><br><br>**SCREENING ORDER** |

William Gipson, a California parolee appearing *pro se* and *in forma pauperis*, filed a civil rights action under 42 U.S.C. § 1983. Gipson is currently in the custody of the California Department of Corrections and Rehabilitation ("CDCR") in parole status. The acts complained of arose in part while Gipson was incarcerated at the California Correctional Institute, Tehachapi ("CCI"), and in part while incarcerated at the California Substance Abuse Treatment Facility, Corcoran, ("SATF").[1]

---

[1]    In addition to Sgt. Schmist, Gipson has named C/O Rodriquez, and C/O Jenkins, CDCR employees at CCI. Kathleen Allison, Warden; G. De Ochoa, Correctional Counselor III; Jean LaFlore, Substance Abuse Program Director; Dr. O. Onyeje, M.D.; and Peters, Physician's Assistant, officials and employees at SATF.

I.    **SCREENING REQUIREMENTS**

This Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.[2] This Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that "fails to state a claim on which relief may be granted," or that "seeks monetary relief against a defendant who is immune from such relief."[3] Likewise, a prisoner must exhaust all administrative remedies as may be available,[4] irrespective of whether those administrative remedies provide for monetary relief.[5]

In determining whether a complaint states a claim, the Court looks to the pleading standard under Federal Rule of Civil Procedure 8(a). Under Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is

---

[2]      28 U.S.C. § 1915A(a).

[3]      28 U.S.C. § 1915(e)(2)(B); 42 U.S.C. § 1997e(c); *see Lopez v. Smith*, 203 F.3d 1122, 1126 & n.7 (9th Cir. 2000) (en banc).

[4]      42 U.S.C. § 1997e(a); *see Woodford v. Ngo*, 548 U.S. 81, 93–95 (2006) ("proper exhaustion" under § 1997e(a) is mandatory and requires proper adherence to administrative procedural rules).

[5]      *See Booth v. Churner*, 532 U.S. 731, 734 (2001).

entitled to relief."[6] "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."[7] Failure to state a claim under § 1915A incorporates the familiar standard applied in Federal Rule of Civil Procedure 12(b)(6), including the rule that complaints filed by *pro se* prisoners are to be liberally construed, affording the prisoner the benefit of any doubt, and dismissal should be granted only where it appears beyond doubt that the plaintiff can plead no facts in support of his claim that would entitle him or her to relief.[8]

Section 1983 suits do not support vicarious liability, a plaintiff must demonstrate that each defendant personally participated in the deprivation of his or her rights.[9] This

---

[6]    Fed. R. Civ. P. 8(a)(2).

[7]    *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555 (2007)).

[8]    *Wilhelm v. Rotham*, 680 F.3d 1113, 1121 (9th Cir. 2012).

[9]    *Iqbal*, 556 U.S. at 677; *OSU Student Alliance v. Ray*, 699 F.3d 1053, 1069 (9th Cir. 2012); *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002); *see Monell v. Dep't of Soc. Svcs.*, 436 U.S. 658, 691–95 (1978) (rejecting the concept of *respondeat superior* in the context of § 1983, instead requiring individual liability for the violation); *Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir. 1989) ("Liability under [§] 1983 arises only upon a showing of personal participation by the defendant. A supervisor is only liable for the constitutional violations of . . . subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." (Citations omitted)).

requires the presentation of factual allegations sufficient to state a plausible claim for relief.[10] "[A] complaint [that] pleads facts that are 'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.'"[11] Further, although a court must accept as true all factual allegations contained in a complaint, a court need not accept a plaintiff's legal conclusions as true.[12] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[13]

## II.  GRAVAMEN OF COMPLAINT

Gipson's complaint appears to allege five claims: three arising out of Gipson's incarceration at CCI, Tehachapi, and two arising out of his incarceration at SATF, Corcoran.

CCI, Tehachapi (Schmist, Rodriquez, Jenkins)

1.   On several dates between June 4, 2010 and July 20, 2010, Defendants Schmist, Rodriquez, and Jenkins refused to feed inmates, including Gipson, one or more meals.

---

[10]    *Iqbal*, 556 U.S. at 678-69; *see Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting and applying *Iqbal* and *Twombly*).

[11]    *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557).

[12]    *Id.*

[13]    *Id.* (quoting *Twombly*, 550 U.S. at 555).

2.   As a result of Gipson's complaint about the practice of washing dinner trays in the toilet area against Defendants Schmist, Rodriquez, and Jenkins, Gipson was retaliated against in that he was removed from DNM ("Mobility Impaired Not Impacting Placement") status and moved from a lower bunk on the first level to an upper bunk on the second level.

3.   Gipson requested that a gold necklace be sent home but it was kept by the Defendants.

<u>SATF, Corcoran (Allison, De Ochoa and La Flore)</u>

Gipson alleges he was improperly required to complete 168 hours of a substance abuse program ("SAP") instead of 90 in violation of the Americans with Disabilities Act ("ADA") because he was an inmate considered DMN.

<u>SATF, Corcoran (Onyeje and Peters)</u>

Gipson contends that Defendants Onyeye and Peters refused to treat him for Hepatitis-C and when he appealed his release date was changed from June 7, 2011, to June 10, 2011, and it was not corrected notwithstanding that the appeal coordinator said it should be.

<u>Relief Requested</u>

Gipson requests that this Court: (1) compel the State to pay for his Hepatitis-C treatments ($250.00 twice weekly) and pay him

$850,000;  (2) order return of his necklace; and (3) compel the Defendants to find other lines of work.

## III. DISCUSSION

### A.    Administrative Proceedings

Gipson filed a Inmate/Parolee Appeal Form (CDC 602) with respect to his complaint about the manner in which food trays were being cleaned. That complaint was apparently resolved at the informal level. "Partially granted:  the culinary officers were talked to regarding tray washing procedures and assuring that the trays are clean. Paper products are not a feasible answer due to cost factor." It does not appear that Gipson sought further review of the question through the prison system's appeal process.

With respect to his claim concerning credit for his participation in the  Substance Abuse Program, Gipson exhausted his administrative remedies. At the Director's Level, the Appeals Examiner held:

> I   **APPELLANT'S ARGUMENT:** The appellant stated he is mobility impaired, with limited physical ability for "short walks" when wearing braces.  He claimed he was not afforded credit for 84 days when he attended a Substance Abuse Program (SAP) at another institution. The appellant requested accommodation to include: (1) Award of the credits he earned for SAP; and (2) Movement to Building "3," which is closer to the Dining Hall to accommodate his medical condition.
>
> II  **SECOND LEVEL'S DECISION:** The reviewer noted on March 21, 2011, S. Alva, Correctional Lieutenant, interviewed and evaluated the appellant for his issues on

appeal. During interview, the appellant claimed J.
Spoerer, Correctional Counselor I, informed him he would
receive credits when he completed the SAP on Facility
"F." The request for credits was granted, but the request
to move to Building "3" was denied. The appellant
indicated he was satisfied and was no longer requesting
to be moved to Building "3." The response provided to the
appellant was reviewed and approved by the Associate
Warden Complex IV.

As he expressed disagreement with the determination made
in this case, the Warden assigned C. Heck, Americans with
Disabilities Act Unit Associate Governmental Program
Analyst, to complete comprehensive review of the
appellant's issues on appeal. All submitted documentation
and arguments have been considered. Additionally, a
thorough examination has been conducted regarding the
claim presented, and evaluated in accordance with
institutional Operational Procedures, applicable sections
of the California Code of Regulations, Title 15" (CCR),
the CDC Operations Manual, and the Armstrong Remedial
Plan (ARP). The appellant claimed discrimination based on
disability, due to denial of Milestone Credits. He
claimed he should not have to complete the SAP twice
because of disability. Upon review, there was no medical
indication for the appellant to move to another building,
based on the current limitations included on his current
CDC Form 1845, Disability Placement Program Verification
(DPPV). On November 17, 2011, the appellant was endorsed
for transfer at the California Men's Colony (CMC) and
arrived at the California Substance Abuse Treatment
Facility (SATF) on November 29, 2011, based on the
availability of institutional programs and housing.
Although he claimed disability discrimination, he failed
to provide evidence or documentation to substantiate this
allegation. Based on the information noted, the Warden
concurred with and approved the decision rendered in this
case.   The appeal was denied at the Second Level of
Review (SLR) on April 25, 2011.

III   THIRD LEVEL DECISION:   Appeal is denied.

   A.   FINDINGS: In requesting a Third Level of Review
   (TLR), the appellant expressed dissatisfaction, and
   stated because of disability, he was required to

transfer to the SATF and had to "do" 166 days in a
90-day SAP program. He also noted "repeatedly" that
he was not requesting to be moved to Building "3";
he is appealing a violations uf the CCR 3043.6 and
CCR 3085, which caused his transfer from the CMC-
West Facility.

In reaching a decision at the TLR, the appellant's
claim is refuted, as he clearly indicated in his
CDCR Form 1824, Reasonable Modification or
Accommodation Request, that he wanted to move to
Duilding "3" to enable him to "do the short walk"
to meals. At the SLR, the Americans with
Disabilities Act (ADA) Staff and the Warden
evaluated the appellant's case and found no
'medical necessity to move him to another building,
based on his cUJTent Disability Placement Program
(DPP) designation of Mobility Impaired Not
Impacting Placement (DNM), housing restrictions,
physical limitations to job assignments, and a
health care appliance to assist with ambulation.
At the CMC-W, the appellant was placed in the DPP
with a designation of Intermittent Wheelchair User
(DPO), which required level terrain and no stairs
in the path of travel; therefore, he was
appropriately transferred to the SATF in accordance
with the ARP and the CCR 3085.

Pursuant to the ARPIV.F.2, Prescription and
Approval, which states in part, "Health care
appliances shall be prescribed and approved for
eligible inmates by licensed CDC health care
providers, subject to medical necessity." An
accommodation must be deemed medically necessary by
the current medical staff in charge of the
appellant's care. In accordance with the California
Code of Regulations, Title 15, Section (CCR),
3350(b)(l ), "Medically Necessary means health care
services that are determined by the attending
physician to be reasonable and necessary to protect
life, prevent significant illness or disability, or
alleviate severe pain, and are supported by health
outcome data as being effective medical care." As
medical necessity was not established for

accommodation, further consideration shall not be given.

The appellant is also informed an ADA appeal must involve a request for access or participation in a program, service, or activity, in which the inmate claims access or participation is impaired or limited due to disability; therefore, the request for reasonable modification or accommodation. The issues regarding Milestone Credits and Impact of Transfer on Credit Earning Status are not ADA issues in this case, and will not be addressed in this response at the TLR.  He is informed he must pursue these issues via submission of a separate CDCR Form 602, Inmate/Parolee Appeal Form, to address his concerns.

After consideration of the evidence and arguments herein, it has been determined that staff acted appropriately on the appellant's request, and no additional accommodation is warranted at the TLR.

**B.   BASIS FOR THE DECISION:**
ARP: ARPI, ARPII.A, ARPILB, ARPIV.H.l, ARPIV.B.2, ARPIV.F.2
CCR: 3085,3350,3350.1,3354,3358

**C.   ORDER:** No changes or modifications are required by the Institution.

This decision exhausts the administrative remedy available to the appellant within CDCR.[14]

It also appears that Gipson filed two claims with the California Victim Compensation and Government Claims Board, No. G597801 and No. G598548, both of which were denied.[15]  It is not

---

[14]    Docket 1 at 13–14.

[15]    Docket 1 at 9–12, inclusive.

apparent from the allegations in the Complaint, or the documents attached to it, to what matters those two claims related.

**B.   Analysis**

First, to the extent this action challenges the fact or duration, not a condition of Gipson's incarceration, it is improperly brought as a civil rights action under § 1983. Gipson's complaint concerning the alleged extension of his confinement challenges the *duration* of his custody, not a condition; therefore it must be brought in a petition for *habeas corpus* relief under 28 U.S.C. § 2254 or 2241, as appropriate.[16]

One of the preconditions to bringing a federal *habeas* petition is that this Court may not consider claims that have not been fairly presented to the state courts.[17] Unexhausted claims must be dismissed.[18] Exhaustion of state remedies requires the petitioner to fairly present federal claims to the state courts in order to

---

[16]   *Ramirez v. Galaza*, 334 F.3d 850, 856 (9th Cir. 2003) ("Suits challenging the validity of the prisoner's continued incarceration lie within 'the heart of habeas corpus,' whereas 'a § 1983 action is a proper remedy for a state prisoner who is making a constitutional challenge to the conditions of his prison life, but not to the fact or length of his custody.'") (citation omitted).

[17]   28 U.S.C. § 2254(b)(1); *see Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing cases).

[18]   *See Rhines v. Weber*, 544 U.S. 269, 275-78 (2005); *Engle v. Issac*, 456 U.S. 107, 125 n.28 (1982); *Rose v. Lundy*, 455 U.S. 509, 510 (1982).

give the state the opportunity to pass upon and correct alleged violations of its prisoners' federal rights.[19]  hus, Gipson has failed to fully exhaust his state court remedies by presenting his claim to the highest state court,[20] i.e., the California Supreme Court.

Because Gipson is proceeding *pro se* and this Court must liberally construe *pro se* pleadings,[21] normally this Court would simply dismiss with leave to amend providing Gipson the opportunity to cure the defect, i.e., refile as a petition for *habeas* relief. In this case, however, it is obvious from the Complaint that Gipson has not sought relief in any form in the California State Courts. Thus, as a petition for federal *habeas* relief, because he has not exhausted any of his claims, it is premature and must be dismissed.[22] Dismissal will, however, be without prejudice to Plaintiff filing a petition for federal *habeas* relief under 28

---

[19]    *Duncan v. Henry,* 513 U.S. 364, 365 (1995).

[20]    *See Peterson v. Lampert*, 319 F.3d 1153, 1155-56 (9th Cir. 2003) (citing *Picard v. Connor*, 404 U.S. 270, 275 (1971) and *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)).

[21]    *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *Porter v. Ollison*, 620 F.3d 952, 958 (9th Cir. 2010).

[22]    As a habeas petition it would consist of solely unexhausted claims, not *both* exhausted and unexhausted claims. Thus, the stay and abey procedure under which the court dismisses the unexhausted claims and holds the exhausted claims in abeyance pending exhaustion is inapplicable. *See Rose v. Lundy*, 455 U.S. 509, 522 (1982); *Pliler v. Ford*, 542 U.S. 225, 230 (2004) (citing *Rose*).

U.S.C. § 2241 or § 2254, as appropriate. Furthermore, the record establishes that Gipson's complaint *vis-a-vis* the SAP credit was resolved satisfactorily. Gipson has failed to plead a viable civil rights cause of action under § 1983 against Kathleen Allison, Warden, G. De Ochoa, Correctional Counselor III, or Jean LaFlore, the Substance Abuse Program Director.

It is difficult to ascertain from the Complaint precisely just what action by which prison official he contends violated his civil rights or the relief that Gipson seeks for the violation of his rights. To the extent that Gipson is challenging the ten instances in which he was allegedly deprived of a meal extending over a period of approximately a month and a half (45 days), it does not appear that he exhausted his administrative remedies. Even if he had, it is questionable whether this rises to the level of cruel and unusual punishment.[23] As to his claim concerning the washing of trays, it appears that was resolved internally; or, if not, Gipson did not seek further review. It also appears that Gipson has never exhausted his administrative remedies on his alleged retaliation claim. To the extent that Gipson seeks return of his gold necklace, that is not the proper subject of a federal civil

---

[23]     *But cf. Foster v. Runnels*, 554 F.3d 807, 812–13 (9th Cir. 2009) (holding that a claim of denial of 16 meals in 23 days was sufficient to constitute a serious deprivation).

rights action, but may be brought in the California state courts. Gipson's allegations against Correctional Officers Schmist, Rodriquez, Jenkins are insufficient to warrant the granting of the relief requested, or any relief at all, under § 1983. Furthermore, it is readily apparent that Gipson could not amend his Complaint to allege a viable civil rights violation claim against those individuals, i.e., that cures the defects noted above.

Gipson simply alleges without explanation that Dr. Onyeje and Physician's Assistant Peters refused to treat him for Hepatitis-C. The Supreme Court, holding that deliberate indifference to serious medical needs violated the Eighth Amendment, stated:

> [D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.[24]

In *Estelle* the Supreme Court distinguished "deliberate indifference to serious medical needs of prisoners," from "negligen[ce] in diagnosing or treating a medical condition," holding that only the

---

[24]    *Estelle v. Gamble* 429 U.S. 97, 104–105 (1976) (footnotes, internal quotation marks and citations omitted).

former violates the Constitution.[25] In short, Eighth Amendment liability requires "more than ordinary lack of due care for the prisoner's interests or safety."[26]

In determining deliberate indifference, the court scrutinizes the particular facts and looks for substantial indifference in the individual case, indicating more than mere negligence or isolated occurrences of neglect.[27] The Ninth Circuit has spoken to the subject of the appropriate test under *Estelle*:

> In the Ninth Circuit, the test for deliberate indifference consists of two parts. First, the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Second, the plaintiff must show the defendant's response to the need was deliberately indifferent. This second prong—defendant's response to the need was deliberately indifferent—is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. Indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care. Yet, an inadvertent [or negligent] failure to provide adequate medical care alone does not state a claim under § 1983. A prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs. If the harm is an isolated exception to the defendant's overall treatment of the

---

[25]  *Id.* at 106.

[26]  *Whitley v. Albers,* 475 U.S. 312, 319 (1986).

[27]  *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990).

prisoner [it] ordinarily militates against a finding of deliberate indifference.[28]

At this stage, Gipson's Complaint on this basis suffers from two infirmities. First, this Court cannot determine whether the actions of the medical personnel involved rises to the level of deliberate indifference. On the other hand, accepting as true Gipson's allegation that he was denied any treatment, it is obvious that he *may* be able to plead a viable claim. Second, it does not appear that Gipson has exhausted his administrative remedies with respect to this claim. Accordingly, although Gipson's Complaint as presently constructed must be dismissed for failure to state a claim upon which relief may be granted, as to his medical claim, dismissal must be with leave to amend. In amending his Compliant, Gipson must allege sufficient facts that, if proven, would support an inference of deliberate indifference to a serious medical condition *and* that he has exhausted his available administrative remedies.

## IV.   CONCLUSION/ORDER

It does not appear that Gipson can plead facts sufficient to state a colorable constitutionally-based claim against Correctional Officers Schmist, Rodriquez, and Jenkins, Warden Kathleen Allison,

---

[28]     *Jett v. Penner*, 429 F.3d 1091, 1096 (9th Cir. 2006) (internal quotation marks and citations omitted).

Correctional Counselor G. De Ochoa, and SAP Program Director Jean La Flore, or any of them, and this Court declines to exercise its supplemental jurisdiction over the state law claims as against those Defendants.[29] Therefore, those claims are properly dismissed without leave to amend.

Accordingly, for the reasons stated above, the Court **ORDERS** as follows:

1.    The Complaint on file herein is **DISMISSED** in its entirety;

2.    The dismissal is without leave to amend as to Defendants C/O Sgt. Schmist; C/O Rodriquez; C/O Jenkins; Kathleen Allison, Warden; G. De Ochoa, Correctional Counselor III; and Jean LaFlore, Substance Abuse Program Director;

3.    Plaintiff is granted through and including **May 31, 2013**, within which to file an amended complaint against O. Onyeje, M.D. and Peters, Physician's Assistant, consistent with the requirements outlined in Part III, above.

**IT IS SO ORDERED** this 29th day of April, 2013.

                    S/RALPH R. BEISTLINE
                    UNITED STATES DISTRICT JUDGE

---

[29]    "The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if— . . . (3) the district court has dismissed all claims over which it has original jurisdiction . . .." 28 U.S.C. § 1367(c).